LILLIAN A. CHASE v. DORA R. FLEISCHNER ET AL.

SUPERIOR COURT    NEW HAVEN COUNTY    FILE No. 69685

Memorandum filed August 20, 1951.

*Joseph I. Sachs,* of New Haven, for the Plaintiff.

*Robert J. Woodruff* and *David M. Reilly,* of New Haven, for the Defendants.

MOLLOY, J. In a discussion of this case it is well to first state what the plaintiff seeks to accomplish by this action; then to state what is the factual situation as the court feels is warranted by the evidence; and finally, whether or not the contention of the defendants that the plaintiff cannot prevail in the principle of an equitable estoppel is sound.

The action was returned to this court June, 1947, naming Dora Fleischner as the sole defendant. In January, 1949, an amended complaint was filed wherein Dora Fleischner's two daughters Rose F. C. Pestey and Bertha F. Walsh were named as additional defendants. In this amended complaint the plaintiff seeks specific performance of an agreement signed by the defendant Fleischner, wherein she agrees to convey to the plaintiff premises No. 117-119-121-121½ Dixwell Avenue, New Haven. She does not seek money damages. While the agreement was not signed by the defendants Pestey and Walsh, other than Mrs. Pestey as a witness, the plaintiff asks specific performance of them also, based upon the principle of equitable estoppel. The defendants Pestey and Walsh deny, for the most part, the essen-

tial allegations of the amended complaint, and by second defense assert that the agreement, not having been signed by them as required by the Statute of Frauds, § 8293 of the General Statutes, the action is not maintainable against them.

The defendant, Fleischner, asserts in her second defense that she was induced to sign the agreement by the fraudulent representation of the plaintiff and an agent, Julius Brown, who conspired to that end, well knowing her weakened physical condition.

As to the factual situation it seems that on May 23, 1946, by deed recorded in the New Haven land records, the defendant, Dora Fleischner, conveyed several pieces of real estate, including the real estate in question, to her daughters, the defendants Rose F. C. Pestey and Bertha F. Walsh, reserving to herself full use and enjoyment of said real estate during the term of her natural life. However, on March 13, 1947, the defendant, Fleischner, entered into the agreement with the plaintiff whereby the defendant Fleischner agreed to convey to the plaintiff on or before April 1, 1947, the property now sought to be obtained by her through specific performance. Prior to April 1, 1947, the defendant, Fleischner, through counsel, notified the plaintiff that she would not consummate the transaction inasmuch as she was not the owner of the property. A check for the deposit was sent by her attorney to Mrs. Chase.

It is the contention of the plaintiff that the defendants led her to believe that the real estate in question was owned absolutely by Mrs. Fleischner, and that at no time did the defendants or any of them disclose to the plaintiff the fact that title of record was in the name of the defendants Rose F. C. Pestey and Bertha F. Walsh subject only to a life use in favor of the defendant, Fleischner. On this basis it is claimed, as a legal proposition, that the defendants are estopped to now claim the benefit of the Statute of Frauds, Pestey and Walsh not having signed the agreement. In the light of these claims we must determine what actually occurred; whether or not the plaintiff and the agent Brown knew the actual status of the title, or if they did not, were they, under all the circumstances, under a duty to ascertain it. If they did, or if the situation was such as to put them upon notice, then they cannot claim the benefit of an estoppel against these defendants. It is asserted, also, by the defendants that the principle of estoppel is not available as a weapon of assault but only for protection.

The agent, Brown, had been in contact with the defendants several times prior to March 13, 1947, relative to a sale of the property. Finally Mrs. Fleischner signed the agreement to sell, because, she says, Brown told her that she, being the owner of the life use, had the right to sell the property, after she told him and Mrs. Chase she had a life use only in the property. At this conversation she says Mrs. Chase was present. It is evident that both Brown and Mrs. Chase are more experienced in real estate matters than the defendants; they apparently drove a good bargain, from Mrs. Chase's standpoint. But that aside, the crucial question is whether or not Brown and Mrs. Chase knew about the life use only being in Mrs. Fleischner at the time the agreement was signed. The court is convinced that they did; and if they did the plaintiff's case must fall.

Let the court say in the beginning, that none of the witnesses in this case inspired confidence. The court could be critical of all of them. That being so, the court must be shown very clearly and definitely, particularly in a case of this type, that the relief sought is warranted. And so the court, believe it or not, has pondered over the factual situation of the case, seemingly without end.

It is, of course, possible that no disclosure was made of the fact that Mrs. Fleischner had only a life use. But that is not likely to have been the situation. The most natural thing for the defendants to say would be to the effect that the mother could not sell as she did not have title; or for a title holder to immediately say, "Why, I am the owner of this property; the title is in my name." Why should there be any deceit about the matter? Mrs. Fleischner and Mrs. Pestey both say Brown and Mrs. Chase were told the true situation. The reaction of Brown, apparently a shrewd operator, was that nonetheless she, Mrs. Fleischner, could sell even though she had the life use only. And the court is convinced that these defendants finally believed such to be the true fact. This accounts for the signing of this agreement by Mrs. Fleischner, rather than by the title holders; and it accounts for Mrs. Pestey's signature as a witness. Much more might be said on this phase of the case. It may be summed up in the conviction that title having been conveyed to the daughters, of course, there must have been some discussion regarding that matter.

To the mind of the court it is very significant also that Mrs. Pestey and Mrs. Walsh were not made parties defendant in this

action until a year and a half after the original action was instituted. In a situation where a court is in grave doubt on the whole matter, such an incident cannot be lightly brushed aside, particularly where it is asserted that both played a most important part in the negotiations.

During Brown's testimony the court's confidence in Brown's story was shaken on a fact which, under other circumstances, might not be significant. That concerned the time when he got the measurements of the land in question. He testified that he obtained them from the assessor's office after the signing of the agreement. They appear in the agreement. This may have been a slip in remembrance; but again in a doubtful situation, such a lapse is apt to really impress the court on the matter of veracity. It did at the time of the trial.

Such being the conclusions of the court on the factual situation of this case then the inevitable result is that the Statute of Frauds is available and applicable as a defense and there is no occasion to enter into a general discussion of the principle of equitable estoppel, as to whether it is a weapon of assault or solely one of protection, for under the circumstances as found by the court the doctrine cannot be invoked in any event.

The court is convinced that on the whole the burden of proof necessary for the plaintiff to prevail has not been sustained. The issues are found and judgment is directed for the defendants